FILED
2014 JAN -6 PM 3:48
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ANDREW KATRINECZ AND DAVID BYRD,
PLAINTIFFS,

V.

MOTOROLA MOBILITY LLC,
DEFENDANT.

CAUSE NO. 1:12-CV-235-LY

**MEMORANDUM OPINION AND ORDER REGARDING CLAIMS CONSTRUCTION**

Before the court are Plaintiffs Andrew Katrinecz's and David Byrd's (Katrinecz)[1] Markman Brief filed July 15, 2013 (Clerk's Doc. No. 32); Defendant Motorola Mobility LLC's (Motorola's) Opening Claim Construction Brief filed July 15, 2013 (Clerk's Doc. No. 33); Motorola's Responsive Claim Construction Brief filed August 12, 2013 (Clerk's Doc. No. 38); Katrinecz's Response to Motorola's Markman Brief filed August 12, 2013 (Clerk's Doc. No. 39); the parties' Third Amended Joint Claim Construction Statement filed September 24, 2013 (Clerk's Doc. No. 49); and the parties' claim construction presentations.

The court held a claim construction hearing on September 23, 2013. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). After considering the patent and its prosecution history, the parties' claim-construction briefs, the applicable law regarding claim construction, and argument of counsel, the court now renders its order with regard to claim construction.

---

1 Because the interests of Katrinecz and Byrd do not diverge, the court will refer to them jointly as "Katrinecz."

## I. Introduction

The court renders this memorandum opinion and order to construe the claims of the patent-in-suit in this cause, U.S. Patent No. 7,284,872 (the "'872 Patent"). Katrinecz asserts claims against Motorola for infringement of the '872 Patent. The patent generally relates to methods for adapting manufacturing processes for the purpose of illuminating keyboards, keypads, mouses, and other data-entry devices.

## II. Legal Principles of Claim Construction

Determining infringement is a two-step process. *See Markman,* 52 F.3d at 976 ("[There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the current issue before this court.

The court construes patent claims without the aid of a jury. *See Markman* 52 F.3d at 979. The "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* at 1313. The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Id.* Therefore, to ascertain the meaning of claims, courts must look to the claims, the specification, and the patent's prosecution history. *Id.* at 1314–17; *Markman*, 52 F.3d at 979.

Claim language guides the court's construction of claim terms. *Phillips*, 415 F.3d at

1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

Claims must also be read "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Teleflex. Inc. v.Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed.Cir.2002) (internal citations omitted). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Phillips*, 415 F.3d at 1316. In such cases, the patentee's lexicography governs. *Id.* The specification may also reveal a patentee's intent to disclaim or disavow claim scope. *Id.* Such intentions are dispositive for claim construction. *Id.* Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed.Cir.2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what the claims do not cover. *Spectrum Int'l v. Sterilite Corp.*, 164

F.3d 1372, 1378–79 (Fed.Cir.1988). The doctrine of prosecution disclaimer precludes patentees from recapturing specific meanings that were previously disclaimed during prosecution. *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir.2003). Disclaimers of claim scope must be clear and unambiguous. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed.Cir.2002).

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *Id.* at 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence," *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).

## III. Discussion

### *A. Agreed Constructions*

Prior to the claims-construction hearing on September 23, 2013, the parties agreed to the construction of various claim terms. The following table summarizes the parties' agreement. The court hereby adopts the agreed construction of all claim terms as listed below.

| Claim Term/Phrase | Adopted Agreed Construction[2] |
|---|---|
| "keys of an optically transmissive material"<br><br>(Claims 5-9) | **"keys manufactured from a material that transmits light through the material."** |
| "to provide an intensity of illumination to said keys visual to said user of the apparatus"<br><br>(Claims 5-9) | **"to provide light to the keys so that a user of the data entry device can see light through the optically transmissive key material"** |
| "data entry apparatus"<br><br>(Claims 5-9) | **"a device for entering data into a machine"** |
| "making said keys of an optically transmissive material"<br><br>(Claim 8) | **"making the keys from a material that allows light to transmit through the material"** |
| "a method for illuminating the keys of a data entry apparatus"<br><br>(Claim 8) | **The preamble is limiting.**<br>**The method is for illuminating the keys of a device for entering data into a machine.** |

[2]Throughout, the **bolded** terms indicate the court's adopted construction.

*B. Disputed Terms*

The parties dispute the construction of three claim terms. The following table summarizes the parties' proposed constructions of the disputed terms. The court will address and construe each term in turn.

| Claim Term/Phrase | Katrinecz's Proposed Construction | Motorola's Proposed Construction |
|---|---|---|
| 1. "flexible luminescent sheets"<br><br>(Claims 5-9) | Thin, flexible luminescent sheets that can be twisted, bent, and formed into any shape. When connected to a power source, the sheets will emit light. | flexible luminescent sheets |
| 2. "optically transmissive keyboard top plate"<br><br>(Claims 5-7) | Material that is between or encloses the keys. Light from the luminescent sheet will transmit through the top plate to provide illumination of the top plate surface areas as well as the keys. | the upper plate of the keyboard which is manufactured from a material that transmits light through the material |
| 3. "different keys or groups of keys are tinted with different colors"<br><br>(Claim 8) | At least one key or one group of keys has color added to be a different color than other keys. | at least one key or one group of keys is manufactured with color added to be a different color than other keys |

1. "flexible luminescent sheets"

Katrinecz argues that the inventors acted as their own lexicographers by clearly defining, via the specification, what was meant by "flexible luminescent sheets" and that Katrinecz's proposed construction merely incorporates clarifying language from the specification "almost verbatim." Katrinecz also argues that the language relied upon for the proposed construction comes not merely from a preferred embodiment, but from the only

embodiment described in the patent, an application of an electroluminescent ("E-L") lamp. Additionally, Katrinecz asserts that the words "flexible luminescent sheets" are not straightforward or readily understandable by most people.

Conversely, Motorola argues that the words "flexible luminescent sheets" are readily understood and are not terms of art requiring any particular construction beyond their plain and ordinary meaning. Motorola also contends that Katrinecz's proposed construction merely repeats the claim terms with the addition of 22 words over two sentences in an effort to add further limitations to the claim that are not otherwise present. Motorola asserts that Katrinecz's proposed definition attempts to limit the broad term actually claimed to a preferred embodiment of an E-L lamp as described in the specification.

After reviewing the intrinsic record, it is evident to the court that Katrinecz's invention contemplated the use of a known E-L lamp connected to a power source. The specification repeatedly describes E-L lamps and refers to E-L lamps in the figures that accompany the patent. However, the court must begin its inquiry by looking directly at the language of the *claimed* invention. *See Phillips*, 415 F.3d at 1314. In other words, as is so often quoted by parties before this court, "the name of the game is the claim."

The patented invention claims a "flexible luminescent sheet" with no elaboration or qualification. The inventors did not claim a flexible electroluminescent lamp or a flexible electroluminescent sheet. Now, Katrinecz proposes a lengthy construction importing language from the specification that, in addition to repeating the disputed words "flexible luminescent sheet," applies characteristics of E-L lamps. Moreover, although Katrinecz stresses that the E-L lamp embodiment is the only embodiment contemplated by the patent,

the specification explicitly refers to the illustration of Figure 2 as "[a] preferred embodiment of the present invention." Specifically, the flexible luminescent sheet 100 illustrated in Figure 2 is described as being comprised of a commercially available electroluminescent lamp in a *preferred* embodiment. *See* '872 Patent, 3:31-67. Where, as here, the claim language is broader than a preferred embodiment, "it is well settled that claims are not to be confined to that embodiment." *DSW, Inc. v. Shoe Pavillion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008). Further, it is well established that even when a patent describes only a single embodiment, the claims of the patent cannot be construed as being limited to that embodiment. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Katrinecz is asking the court to do just that.

The court declines to limit the claim language by applying the definition taken from the inventors' preferred embodiment. Instead, the court finds the disputed term "flexible luminescent sheets" to be commonly understood, both as individual words and as grouped together. Indeed, the word "luminescent," in some form, is used without definition more than 50 times within the patent document. Sometimes, "the ordinary meaning of the claim language as understood by a person of skill in the art may be readily apparent even to lay judges," in which case claim construction consists of little more than applying "widely accepted meaning of commonly understood words." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007). As commonly understood, "flexible luminescent sheets" are sheets that are both flexible and luminescent. No further definition is required.

The court adopts Motorola's proposed construction of **"flexible luminescent sheets."**

2. "optically transmissive keyboard top plate"

The construction of this term is aided significantly by the parties' agreed construction of the term "keys of an optically transmissive material." It is well established that "the same terms appearing in different portions of the claims should be given the same meaning, unless it is clear from the specification and prosecution history that the terms have different meanings." *Fin Control Sys. Pty., Lrd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001); *see also Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1333 (Fed. Cir. 2011) ("Where a claim term is used consistently throughout the claims, the usage of [the] term in one claim can often illuminate the meaning of the same term in other claims.") (internal quotation and citation omitted). Because there is no evidence in the intrinsic record that "optically transmissive" has a different meaning when applied to a keyboard top plate than it does when applied to keys, the court will adopt the parties' agreed construction of "optically transmissive." Therefore, the court now addresses the construction of "keyboard top plate."

Succinctly stated, parties dispute whether "keyboard top plate" means either "[m]aterial that is between or encloses the keys" or "the upper plate of the keyboard."[3] Each party's proposed definition overlooks a key aspect of the term. Katrinecz's definition is overly broad; the intrinsic record does not support that a top plate is any material that is

---

[3] The parties' briefing materials thoroughly discuss Motorola's proposed term including the additional limitation of "through which the keys extend and." During the claims-construction hearing, Motorola amended its proposed construction in order to focus the issues before the court. Thus, the court considers the parties' most recent amended proposed constructions, submitted post-hearing. *See* Third Amended Joint Claim Construction Statement filed September 24, 2013 (Clerk's Doc. No. 49).

either between or enclosing the keys. As Motorola correctly argues, a top plate is certainly made of material, but not just any material is a top plate. On the other hand, Motorola merely substitutes "upper" for "top" in its definition and leaves "plate" undefined.

As "keyboard top plate" is not otherwise defined in the claim language, the court turns to the patent specification. There, a clear definition is provided: a "[k]ey board top plate [ ] fits *over* or otherwise attaches to key board bottom plate [ ], and *thereby provides enclosure for the keyboard*." '872 Patent, col. 3, lines 14-16 (emphasis added). Nowhere in the specification is this definition contradicted or otherwise improved upon. Therefore, when combined with the agreed construction of optically transmissive, the court arrives at the proper construction.

The term "optically transmissive keyboard top plate" means **"the upper enclosure of the keyboard that transmits light through the enclosure."**

3. "different keys or groups of keys are tinted with different colors"

The dispute over this term essentially centers on the meaning of "are tinted" as it is applied to "keys or groups of keys" in claim 8. The parties' proposed definition varies only by substituing the words "has" or "is manufactured with." Both sides urge that the term be given its plain and ordinary meaning. Katrinecz refers to the patent specification, which describes a variety of methods for providing different colors of illumination, including use of multiple luminescent sheets of different colors, different tinted optically transmissive material for the keys, and mixing the keys with phosphors of different colors. Katrinecz asserts that there is no requirement that the keys themselves be tinted during manufacture.

Motorola argues that the term should be construed as requiring that the keys themselves be tinted during manufacture. Motorola contends that the requirement that keys be "tinted" limits the claims; not all ways of making keys which emit light of different colors can be considered tinting the keys. In support of this argument, Motorola points out that: (1) claim 9 does not require tinted keys, (2) the written description supports that not every way of making keys that emit light of different colors makes those keys tinted, and (3) that addition of the color during manufacturing is consistent with the plain usage of the term "are tinted."

Motorola's proposed construction includes the limitation that the keys be "manufactured with" color added. Problematic to the court is that the word "manufacture" or "manufactured" appears nowhere within claim 8 (or any other claim). Manufacturing and the manufacturing process are frequently discussed within the patent specification, but only mentioned one time in conjunction with keys:

> "[t]he keys are also manufactured as required by the manufacturing process ordinarily used, except that the keys are made from an optically transmissive material, and may further contain phosphorescent material that glows residually during and after illumination."

'872 Patent, col. 2, lines 13-17. Notably, this discussion involves potentially adding in phosphorescent material during manufacturing, but makes no mention of tinting.

Motorola correctly points out that the specification describes several ways of obtaining the desired result of differently colored light emission. Tinting, as described in the patent, is one of at least three ways the inventors detailed. However, the claim applies the

transient verb "are tinted" to "different keys or groups of keys." Therefore, the court must address the limitation that the word tint imposes upon the claim.

The parties agree that, at least in part, to "tint" means to add color. The court can find no additional support in the intrinsic record that to "tint", as used in the claims, must be limited to manufacture. Certainly, keys must be made or manufactured, but neither the claim nor the specification dictates when, how, and in what manner the color must be added. Therefore, the court adopts the less-limited proposed definition of "has color added" as opposed to the more-limited "is manufactured with color added."

The court construes this term as **"at least one key or one group of keys has color added to be a different color than other keys."**

C. *Summary Table of Adopted Agreed and Disputed Terms*

| Claim Term/Phrase | Court's Construction |
|---|---|
| "keys of an optically transmissive material"<br><br>(Claims 5-9) | **"keys manufactured from a material that transmits light through the material."** |
| "to provide an intensity of illumination to said keys visual to said user of the apparatus"<br><br>(Claims 5-9) | **"to provide light to the keys so that a user of the data entry device can see light through the optically transmissive key material"** |
| "data entry apparatus"<br><br>(Claims 5-9) | **"a device for entering data into a machine"** |
| "making said keys of an optically transmissive material"<br><br>(Claim 8) | **"making the keys from a material that allows light to transmit through the material"** |
| "a method for illuminating the keys of a data entry apparatus"<br><br>(Claim 8) | **The preamble is limiting.**<br>**The method is for illuminating the keys of a device for entering data into a machine.** |
| "flexible luminescent sheets"<br><br>(Claims 5-9) | **"flexible luminescent sheets"** |
| "optically transmissive keyboard top plate"<br><br>(Claims 5-7) | **"the upper enclosure of the keyboard that transmits light through the enclosure"** |
| "different keys or groups of keys are tinted with different colors"<br><br>(Claim 8) | **"at least one key or one group of keys has color added to be a different color than other keys."** |

## IV. Conclusion

For the above reasons, the court construes the disputed claims as noted and so **ORDERS**. No further claim terms require construction.

**IT IS FURTHER ORDERED** that this case is set for a **Scheduling Conference** on **March 11, 2014, at 2:00 p.m.**, in Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701. The parties shall meet and confer in advance of that date in an attempt to settle this case. If the case is not settled, the parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of this case. The court will render a Scheduling Order as a result of the March 11, 2014 conference.

SIGNED this 6th day of January, 2014.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE