# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ANDREW KATRINECZ, *ET AL.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1-12-CV-00235 |
| | ) | |
| v. | ) | Judge Lee Yeakel |
| | ) | |
| MOTOROLA MOBILITY LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS FOR
## LACK OF SUBJECT MATTER JURISDICTION

## TABLE OF CONTENTS

I.      Introduction ................................................................................................. 1

II.     Factual Background ....................................................................................... 2

III.    Legal Standards ............................................................................................ 4

        A.........Factual vs. Facial Motions to Dismiss for Lack of Standing .................................. 4

        B.........Standing in Patent Cases ......................................................................... 6

        C.........Transfers of Patents and Patent Rights ........................................................ 7

        D.........Florida Divorce Law and Division of Property ................................................ 9

IV.     Argument ..................................................................................................... 11

        A.........Rights in the Keyboard Invention Leading to the Patent-in-Suit Was a
                Marital Asset Jointly Owned by Mr. Katrinecz and His Now Ex-Wife .............. 11

        B.........Mr. Katrinecz Did Not Disclose Rights to the Alleged Keyboard Invention
                to His Ex-Wife During the Divorce and Those Rights Are Not Referenced
                in the Agreements or Final Judgment, So Those Rights Became Co-
                Owned Upon Entry of Final Judgment in the Divorce Proceeding Under
                Florida Law ...................................................................................... 15

        C.........The Inchoate Rights That Mr. Katrinecz and Ms. Armstrong Co-Owned
                Following the Final Judgment Dissolving Their Marriage Led To Co-
                Ownership of Rights in the Keyboard Patents, Including the Patent-In-Suit ....... 17

        D.........All Joint Owners of the Patent-in-Suit Were Not Present In the Action At
                the Time it Was Filed and the Case Must Be Dismissed ................................ 18

V.      Conclusion .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akazawa v. Link New Tech. Int'l, Inc.*,
520 F.3d 1354 (Fed. Cir. 2008)..................................................................8

*Allen v. Wright*,
468 U.S. 737 (1984)..................................................................................6

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)....................................................................................6

*Bhandari v. Cadence Design Sys., Inc.*,
485 F. Supp. 2d 747 (E.D. Tex. 2007)......................................................6

*Cammeyer v. Newton*,
94 U.S. 225 (1876)....................................................................................8

*Castle v. United States*,
301 F.3d 1328 (Fed. Cir. 2002)................................................................6

*Cleary v. Hough*,
567 So.2d 1039 (Fla. Dist. Ct. App. 1990) ............................................10

*Davis v. Die ujuste*, 496 So.2d 806 (Fla. 1986) ......................................19

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008)............................................................7, 9

*Demorizi v. Demorizi*,
851 So.2d 243 (Fla. Dist. Ct. App. 2003) ..................................10, 15, 17

*Enovsys LLC v. Nextel Communications, Inc.*,
614 F.3d 1333 (Fed. Cir. 2010)............................................................7, 8

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)..........................................................7, 19

*Filmtec Corp. v. Allied-Signal Inc.*,
939 F.2d 1568 (Fed. Cir. 1991)........................................................12, 17

*Gayler v. Wilder*,
51 U.S. 477 (1850)..................................................................................18

*Gulbrandsen v. Gulbrandsen*,
22 So.3d 640, 644 (Fla. Dist. Ct. App. 2009) ..........................10, 11, 12

*H.M. Stickle v. Heublein, Inc.*,
   716 F.2d 1550 (Fed. Cir. 1983)...................................................................................8

*Hammond v. Mason & Hamlin Organ Co.*,
   92 U.S. 724 (1875)........................................................................................................9

*Harrison v. Morton*,
   171 U.S. 38 (1898)........................................................................................................8

*Israel Bio-Eng'g Project v. Amgen, Inc.*,
   475 F.3d 1256 (Fed. Cir. 2007)...................................................................................7

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
   109 F.3d 1567 (Fed. Cir. 1997)...................................................................................8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)......................................................................................................6

*Littlefield v. Perry*,
   88 U.S. 205 (1874)........................................................................................................9

*MHL Tek, LLC v. Nissan Motor Co.*,
   655 F.3d 1266 (Fed. Cir. 2011)...................................................................................4

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1981) ......................................................................................6

*Santoro v. United States*,
   4:07cv301, 2008 WL 2130423 (E.D. Tex. May 16, 2008) ......................................6

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005)......................................................................................6

*Simon v. Eastern Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976)........................................................................................................6

*Sky Tech. LLC v. SAP AG*,
   576 F.3d 1374 (Fed. Cir. 2009)................................................................................7, 8

*STC.UNM v. Intel Corp.*,
   -- F.3d --, 2014 WL 2535257 (Fed. Cir. Jun. 6, 2014) ....................................18, 20

*Taylor v. Taylor Made Plastics, Inc*

   No. 8:12-CV-746-T-EAK-AEP, 2013 WL 1798964, *1 (M.D. Fla. Apr. 29, 2013) .............19

*Waterman v. MacKenzie*,
   138 U.S. 252 (1891)....................................................................................................16

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ..................................................................5

**STATUTES**

28 U.S.C. § 1738 ....................................................................................19

35 U.S.C. § 261 .......................................................................................7

35 U.S.C. § 262 .......................................................................................7

35 U.S.C. § 281 .......................................................................................6

FLA. STAT. ANN. § 61.075 (West 1997)..........................................9, 10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 19 ...........................................................................7, 18, 20

Fed. R. Civ. P. 12(b)(1).....................................................................5, 6, 20

Fed. R. Civ. P. 12(b)(6).............................................................................5

U.S. Const., Art. III..................................................................................6

## TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| Ex. A | Plaintiffs' Responses and Objections to Motorola Mobility LLC's First Set of Interrogatories [Nos. 1-15] |
| Ex. B | Plaintiffs' Objections and Responses to Defendant Adesso, Inc.'s Interrogatories to Plaintiffs (from *Katrinecz v. Adesso, Inc., et al.*, 2:08-cv-236-TJW) |
| Ex. C | Final Judgment Dissolving Marriage (Sept. 17, 1998) |
| Ex. D | Marital Settlement Agreement |
| Ex. E | Report from Delaware Division of Corporations – Online Services re "Twenty-First Century Technologies, Inc." |
| Ex. F | Certificate of Incorporation of Twenty-First Century Technologies, Inc. |
| Ex. G | Katrinecz fax to USPTO dated Aug. 22, 2007 recorded at USPTO Reel No. 019725, Frame: 0909. |
| Ex. H | Fax from Andy Katrinecz to "Costa" dated Nov. 16, 2005. |
| Ex. I | Webpages related to "Nite-Surfer" keyboard from archive.org |
| Ex. J | Okaloosa County Docket Report for 1998 DR 002672 S, *Katrinecz, Andrew J J v. Katrinecz Terri* |
| Ex. K | Assignment and assignment recordation documents dated Aug. 20, 1998 (recorded at Reel 9413, Frame 0673). |
| Ex. L | U.S. Patent No. 7,284,872 |
| Ex. M | U.S. Patent No. 6,773,128 |
| Ex. N | U.S. Patent No. 6,199,996 |
| Ex. O | U.S. Patent No. 8,540,384 |
| Ex. P | Addendum Marital Settlement Agreement |
| Ex. Q | Available Monthly Income & Financial Affidavit of Andrew J. Katrinecz, Jr. |
| Ex. R | Combined Declaration and Power of Attorney for Patent Application to "Low Power, Low Cost Illuminated Keyboards and Keypads" |

Defendant Motorola Mobility LLC ("Motorola Mobility") has recently discovered that Plaintiffs lack standing because Messrs. Katrincez and Byrd are not the sole owners of rights to the patent-in-suit.  Because all patent owners are not parties in this litigation, applicable precedent requires dismissal for lack of subject matter jurisdiction. Therefore, Motorola Mobility brings this factual motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) and requests the Court to dismiss this action.

## I.    INTRODUCTION

Andrew Katrinecz and David Byrd are listed as the co-inventors of U.S. Patent No. 7,284,872 ("the '872 patent" or "patent-in-suit").  Plaintiffs allege that Messrs. Katrinecz and Byrd together "own all right, title, and interest in the '872 patent," Dkt. 69 (First Am. Compl.) ¶ 17, and accordingly have the right to bring this lawsuit.  However, as recent discovery has revealed, as a result of a divorce proceeding between one of the inventors, Mr. Katrinecz, and his now ex-wife Ms. Terri Armstrong (n/k/a Terri A. Cothern),[1] the '872 patent was owned by three people at the outset of this suit: Andrew Katrinecz, David Byrd, and Terri Armstrong.  As the applicable facts and controlling law show, because Ms. Armstrong was not joined as a plaintiff to this suit, the suit must be dismissed.

Plaintiffs have repeatedly contended, in verified interrogatory responses, that the alleged keyboard invention covered by the patent-in-suit was fully developed by August 1998.  August 1998 also was the time of the divorce between Mr. Katrinecz and Ms. Armstrong.  Florida law treats the inchoate right to obtain a patent to an invention developed during the marriage as personal property subject to equitable distribution upon dissolution of a marriage.  When a marital settlement agreement fails to address personal property, that property is co-owned by

---

[1] For consistency, since Mrs. Terri L. Katrinecz, Ms. Terri Lynn Armstrong, and Mrs. Terry A. Cothern are one in the same person, *see* Cothern Decl., ¶ 2, we will refer to her by her maiden name Terri Lynn Armstrong or "Ms. Armstrong" throughout this motion.

both spouses by operation of law upon the entry of final judgment dissolving the marriage. Since the Marital Settlement Agreement between Mr. Katrinecz and Ms. Armstrong failed to address rights in the alleged keyboard invention that Mr. Katrinecz developed during the course of the marriage, those rights became co-owned by both ex-spouses when the final judgment dissolving their marriage was entered.  Thus, when the patent-in-suit issued, it had three owners. Since one of those owners has not voluntarily joined this suit, the suit must be dismissed for lack of standing.

## II.    FACTUAL BACKGROUND

The '872 patent names two inventors: David Byrd and Andrew Katrinecz.  *See, e.g.*, Dkt. 69, ¶ 14 & Ex. A.  The '872 patent claims priority back to an earlier patent application first filed with the Patent Office on August 26, 1998.  Messrs. Katrinecz and Byrd have verified that they "conceived of the subject matter of the inventions . . . [in that patent] on or about April 15, 1997" and that "[d]uring the late spring and summer of 1997," they "built prototypes of their invention."  Ex. A at 16; *see also* Ex. B at 3.  By October 1997, Plaintiffs say they engaged a "law firm to begin patent work."  Ex. B at 3.

Though extensive investigation, Motorola Mobility has learned that during the period Messrs. Katrinecz and Byrd conceived of, built, and worked with a law firm on a patent application directed to their alleged keyboard invention,[2] Mr. Katrinecz was married to a Mrs. Terri Katrinecz (nee Terri Lynn Armstrong).  *See* Ex. C, at ¶ 1.  On August 11, 1998—just 15 days before the first patent application leading to the patent-in-suit was filed—Mr. Katrinecz and Ms. Armstrong entered into a Marital Settlement Agreement agreeing to end their nine-year

---

[2] Motorola Mobility has taken the position that Plaintiffs' patent is invalid.  Thus, references to any invention is in no way intended to be an admission that they met the conditions for patentability contained in the Patent Act including the requirements for novelty (§ 102) or nonobviousness (§ 103).

marriage.[3]  *See* Ex. D.   Three days after the settlement was signed, Mr. Katrinecz and Mr. Byrd filed papers in Delaware incorporating a company called Twenty-First Century Technologies, Inc. ("Twenty-First Century").  *See* Exs. E & F.  Over the years, Mr. Katrinecz has held himself out as Chief Financial Officer, Chief Executive Officer, and President of Twenty-First Century Technologies.  *See, e.g.*, Exs. G-I.

Relevant to this Motion, three things happened on August 20, 1998.  First, Mr. Katrinecz filed a Petition for the Dissolution of Marriage attaching the Marital Settlement Agreement and Addendum thereto.  *See* Ex. J.  Second, Mr. Katrinecz executed a patent assignment in which he professed to be "the owner of [a] certain new and useful invention entitled 'Lower Power, Low Cost Illuminated Keyboards and Keypads' (hereinafter called the 'Invention')"[4] and stating that he desired to assign "all right, title and interest in and to said Invention, patents and patent application on said Invention" to his newly formed company, Twenty-First Century.  Ex. K.  The assignment then conveys "all right, title and interest throughout the world in and to: 1. Said Invention; [and] 2. All applications for patent or like protection on said Invention made by Assignors or their legal representatives, whether in the United States of America or any other country or place anywhere in the world."  *Id.*  Showing that they knew that the right to file for a patent was a transferrable right, Messrs. Katrinecz and Byrd expressly transferred their rights to file patent applications to Twenty-First Century.  *Id.* at ¶ 6.  Third, Andrew Katrinecz signed a "Combined Declaration and Power of Attorney" declaring, under penalty of perjury that he had "reviewed and under[stood] the contents of" a patent application titled "Low Power, Low Cost

---

[3] The Marital Settlement Agreement was amended on August 17, 1998 to address certain liabilities and assets that were not accounted for in the original August 10th Agreement, but again, the alleged keyboard invention was not mentioned.
[4] This is the same title as the '872 patent, as well as the earlier applications in the chain of priority that led to the '872 patent.  Exs. L-N.

Illuminated Keyboards and Keypads," further indicating that not only was the alleged invention complete at the time he filed divorce, the work on the patent application was also done.  On August 26, 1998, now six days after the Petition for the Dissolution of Marriage was filed, Twenty-First Century filed an application for a patent titled "Lower Power, Low Cost Illuminated Keyboards and Keypads."  Through a series of divisional applications, that original patent application would lead to the patent-in-suit.  A final judgment dissolving the marriage was entered on September 17, 1998.  That final judgment incorporated the terms of the Marital Settlement Agreement and the Addendum thereto by reference.  *See* Ex. C, ¶ 5.

At the time of the settlement agreement between Mr. Katrinecz and his ex-wife, Mr. Katrinecz did not disclose to his spouse that: (1) he planned on forming a company; and (2) he had hired a lawyer to work on a patent application related to the alleged keyboard invention that he had developed with Mr. Byrd.  Nor did Mr. Katrinecz disclose his alleged invention on his financial affidavit submitted to the Okaloosa Country Court seeking the judgment of divorce.  Indeed, until very recently, Mr. Katrinecz's ex-wife, Terri Lynn Armstrong, was unaware that Mr. Katrinecz was seeking to monetize an alleged invention created during their marriage.  Decl. of Terri A. Cothern (f/k/a Terri Katrinecz) ¶ 7 ("Cothern Decl.").  But that lack of disclosure did not stop her from becoming a co-owner of rights to the patents by operation of law as set forth below.

## III.   LEGAL STANDARDS

### A.     Factual vs. Facial Motions to Dismiss for Lack of Standing

Plaintiffs have the burden of proving that they have standing to bring suit and that the court has the power to hear their case; patent cases are no different.  *See MHL Tek, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1274 (Fed. Cir. 2011) ("The party bringing the action has the burden of establishing that it has standing to sue for infringement.").   The Fifth Circuit

recognizes two different types of challenges to standing: (a) facial, and (b) factual.  *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (observing that the district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

A facial challenge looks at subject matter jurisdiction from the perspective of the allegations in the Complaint, which must be evaluated as they would be in a Rule 12(b)(6) motion—*i.e.*, the "court must consider the allegations in the plaintiff's complaint as true." *Williamson*, 645 F.2d at 412.  But, a 12(b)(1) motion and a 12(b)(6) motion "are treated quite differently *when matter outside the complaint is the basis of the attack*."  *Id* (emphasis added). While some Rule 12(b) motions are converted into summary judgment when issues beyond the pleadings are presented "[t]his protection is not, however, provided for the plaintiff who faces dismissal for lack of subject matter jurisdiction."  *Id.*

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Williamson*, 645 F.2d at 412 (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  Thus, courts must resolve factual questions in connection with factual motions to dismiss since "[j]urisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations. . . . The unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed."  *Williamson*, 645 F.2d at 413 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).

B.        **Standing in Patent Cases**

In a patent case—as in all federal cases—the party bringing suit has the burden of establishing that the cause of action lies within the court's jurisdiction.  *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).  This is because "[f]ederal courts are courts of limited jurisdiction" and there is a presumption "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Santoro v. United States*, 4:07cv301, 2008 WL 2130423, *1 (E.D. Tex. May 16, 2008) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."). Plaintiffs' burden to prove standing in response to a factual attack on subject matter is to establish jurisdiction by a preponderance of the evidence.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (in a factual attack, the plaintiff has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction).

Under Article III of the United States Constitution, federal courts may adjudicate only actual "cases" or "controversies."  *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37-38 (1976).  "Standing to sue or defend is an aspect of [this] case or controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 46 (1997).  If a plaintiff lacks standing to sue, the case must be dismissed for lack of subject matter jurisdiction.  *See, e.g., Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750-51 (E.D. Tex. 2007).    In patent cases—like other civil cases—standing is a "threshold jurisdictional issue." *Castle v. United States*, 301 F.3d 1328, 1337 (Fed. Cir. 2002).

Standing to sue for patent infringement derives from the Patent Act, which provides that a "patentee shall have remedy by civil action for infringement of his patent."  35 U.S.C. § 281. The Patent Act also permits joint ownership of patents and gives each joint owner the right to "make, use, offer to sell, or sell the patented invention," or to import it, "without the consent of

and without accounting to the other owners." 35 U.S.C. § 262.  In situations in which there are multiple patent owners, Federal Circuit precedent requires all joint owners to "join all other co-owners to establish standing" to sue.  *Envsys LLC v. Nextel Communications, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010); *see also Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) ("Where one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing.").  In the absence of all co-owners of a patent, a suit for infringement of a patent must be dismissed.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (since the "complaint lacks the participation of a co-owner of the patent . . . this court must order dismissal of this suit").

Where ownership in a patent has been divided, one co-owner "has the right to limit the other co-owner's ability to sue infringer by refusing to join voluntarily" in a suit for infringement.  In other words, Fed. R. Civ. P. 19 cannot be used to force a co-owner into a suit, *see, e.g.*, *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 n.2 (Fed. Cir. 2008) ("[W]e have explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner."), and "[a]bsent the voluntary joinder of all co-owners of a patent," a subset of co-owners "will lack standing" to sue, *Israel Bio-Engineering*, 475 F.3d at 1264-65.  The Patent Act puts "patent co-owners . . . 'at the mercy of each other,'" when it comes to exploiting and enforcing patent rights.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (quoting *Willingham v. Lawton*, 555 F.2d 1340, 1344 (6th Cir. 1977)).

### C.   Transfers of Patents and Patent Rights

Patents may be transferred by an instrument in writing, *see* 35 U.S.C. § 261, and rights to patents can be transferred by operation of law, *see Sky Tech. LLC v. SAP AG*, 576 F.3d 1374, 1380-81 (Fed. Cir. 2009) (UCC sale of patent under Missouri law sufficient to convey title to

patent by operation of law); *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354 (Fed. Cir. 2008) (remanding for district court to consider whether patent was conveyed under Japanese intestacy law where patent owner died intestate).  When evaluating whether patent rights have been transferred by operation of law (as with other questions of patent ownership), the Federal Circuit instructs courts to look to state law.  *See Envosys*, 614 F.3d at 1342 ("Who has legal title to a patent is a question of state law."); *see also Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571 (Fed. Cir. 1997) ("It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts.  Yet that has long been the law.").  Thus, by way of example, the Federal Circuit has recognized that patent rights may transfer: (1) through the laws of intestacy, *see Akazawa*, 520 F.3d at 1357; *H.M. Stickle v. Heublein, Inc.*, 716 F.2d 1550 (Fed. Cir. 1983); (2) through the law of secured transactions where a party defaults on payment obligations and a patent has been pledged as collateral, *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009) (recognizing transfer of title under Massachusetts law as part of a UCC sale); and (3) by operation of law as a consequence of divorce, *see Enovsys*, 614 F.3d at 1342 (evaluating patent ownership under California divorce law to determine "who had an ownership interest in the patents").

Not only can rights to inventions be transferred by operation of law, but property rights in patents can be transferred before a patent is issued including both while an application is pending, as well as before an application for a patent has even been filed.  The Supreme Court has long acknowledged that "[i]nventions may be assigned before they are patented." *Cammeyer v. Newton*, 94 U.S. 225, 226 (1876); *see also Harrison v. Morton*, 171 U.S. 38, 41 (1898) (assignment of pending patent application gives "inchoate right" to the patent which vests once

the patent is granted); *Hammond v. Mason & Hamlin Organ Co.*, 92 U.S. 724, 728 (1875) ("While it is perhaps not necessary to decide whether in any case a sale of an invention which is never patented carries with it anything of value, we are of opinion that the rights growing out of an invention may be sold, and that in the present case the sale, with the right to use it in connection with the existing patent and its reissues or renewals, protects defendants from liability as infringers."); *Littlefield v. Perry*, 88 U.S. 205, 226-27 (1874) ("An assignment of an imperfect invention, with all improvements upon it that the inventor may make, is equivalent in equity to an assignment of the perfected results. The assignment in this case being such a one, the assignees became in equity the owners of the patent granted upon the perfected invention . . . . Courts of equity in proper cases consider that as done which should be. If there exists an obligation to convey at once, such courts will oftentimes proceed as if it had actually been made."). Transfers of inchoate rights to a patent before a patent issues automatically vests legal title to the patent in the assignee or transferee once the patent issues. *See, e.g.*, *DDB Techs.*, 517 F.3d at 1290 (if a contract expressly grants rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law).

### D.      Florida Divorce Law and Division of Property

Because the Katrinecz divorce occurred in Okaloosa County Florida, we look to Florida law to evaluate whether the undisclosed rights to Mr. Katrinecz's alleged keyboard invention were co-owned following Mr. Katrinecz's divorce. Florida applies the principles of equitable distribution when dividing marital assets during a divorce. *See* FLA. STAT. ANN. § 61.075 (West 1997). Under the equitable distribution statute in Florida, marital assets include "[a]ssets acquired . . . during the marriage, individually by either spouse or jointly by them," *id.*, § 61.075(5)(a)(1), and such assets are presumed to be marital assets subject to equal division, *id.* § 61.075(1). In the absence of a valid separation agreement, the date for determining whether an

asset is a marital asset acquired during a marriage or non-marital asset is the date of the filing of a petition for dissolution of marriage. *Id.* at § 61.075(7) ("The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.").

When it comes to the division of intellectual property, Florida law holds that an inchoate right to an invention is a marital asset subject to equitable distribution upon a divorce. *See Gulbrandsen v. Gulbrandsen*, 22 So.3d 640, 644 (Fla. Dist. Ct. App. 2009). Specifically, in the *Gulbrandsen* case, the Florida Court of Appeals was required to decide whether rights in a patent application—an example of an inchoate right to a patent—was a divisible marital asset. The court explained that courts outside Florida had recognized that "a patent is personal property that may be subject of equitable distribution when the inventor and his or her spouse dissolve their marriage," and the Florida appeals court held that there was "no reason to apply a different analysis to a patent application that was deemed sufficiently developed to submit to the federal patent authorities on a non-provisional basis." *Gulbrandsen*, 22 So.3d at 644. Thus, inchoate rights to patents on completed inventions are considered personal property for the purposes of distribution upon dissolution of a marriage.

Under Florida law, when "an item of personal property [is] omitted from the property settlement agreement and from the final judgment, the husband and wife become tenants in common in the property, by operation of law, upon entry of the final judgment." *See, e.g.*, *Demorizi v. Demorizi*, 851 So.2d 243, 245 (Fla. Dist. Ct. App. 2003); *see also Cleary v. Hough*, 567 So.2d 1039, 1040 (Fla. Dist. Ct. App. 1990) (holding that AT&T stock was owned by both

former spouses because the "final judgment in [the earlier divorce action] was silent as to the stock," such that the parties "became owners as tenants in common on the date of the final judgment").

## IV.   ARGUMENT

The Court should dismiss this case for lack of subject matter jurisdiction because all co-owners of the '872 patent were not parties when this suit was brought.  Thus, Plaintiffs lacked standing to sue.   Despite Mr. Katrinecz's failure to tell his now ex-wife about his intention to seek a patent his alleged keyboard invention, his wife obtained an interest in the completed keyboard invention when the final judgment of divorce was entered.  Thus, at the time this suit was filed, she owned an undivided interest in the patent-in-suit.

### A.   Rights in the Keyboard Invention Leading to the Patent-in-Suit Was a Marital Asset Jointly Owned by Mr. Katrinecz and His Now Ex-Wife

Mr. Katrinecz's inchoate right to apply for and obtain the patent-in-suit (and its related patents) was a marital asset, subject to equitable distribution upon dissolution of his marriage to Ms. Armstrong. There are several reasons that support this inescapable conclusion.

> 1.   *Although Mr. Katrinecz May Have Invented the Keyboard With Mr. Byrd, Florida Law Recognizes the Alleged Keyboard Invention as a Marital Asset.*

First, although Mr. Katrinecz's ex-wife may not have invented the subject matter of the patent-in-suit, under Florida law, patents and the inchoate right to a patent are considered marital property that is distributable in a divorce proceeding.  *See Gulbrandsen*, 22 So.3d at 644. Indeed, by statutory definition, all "[a]ssets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them," are considered "marital assets and liabilities." FLA. STAT. ANN. § 61.075(5)(a).

As in the *Gulbrandsen* case, Mr. Katrinecz's alleged invention—accompanied by the inchoate right to obtain a patent—was an "asset[] acquired . . . during the marriage" and was thus subject to equitable distribution upon divorce.  The Florida court's treatment of the inchoate right to obtain a patent as personal property subject to equitable distribution is consistent with Federal Circuit precedent, which recognizes that "property rights in an invention itself . . . are by definition personal property."  *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (footnote omitted).  Similar to the filing of a non-provisional patent application in *Gulbrandsen*, which the court looked at as an indication that the invention was "sufficiently well-developed" to be treated as personal property subject to equitable distribution, the alleged invention of the '872 patent was sufficiently well developed here, and at the time of the filing of the petition for divorce,  the parent application was on the brink of being filed as a patent application.    According to Plaintiffs' discovery responses, "Andrew Katrinecz and David Byrd conceived the subject matter of the inventions covered by" the '872 Patent "on or about April 15, 1997."  Ex. A at 11 (verified interrogatory response).  "During late spring and summer of 1997, Mr. Katrinecz and Mr. Byrd built prototypes" of the alleged invention.  *Id.*  Although not disclosed in their interrogatory responses in this litigation, Plaintiffs' verified interrogatory responses from another litigation reveal that they "[e]ngaged [a] law firm to begin patent work" in October 1997, and "continue[d] work with [that] law firm on patent work" for roughly eleven months while Mr. Katrinecz was still married to his now ex-wife.[5]  Ex. B at 3; *see also* Ex. A.  Thus, according to Plaintiffs own verified interrogatory responses, not only was the invention conceived during the marriage, prototypes were actually built during the marriage.  And, not

---

[5] The interrogatory refers to the '827 patent, but this is an obvious typographical error since Plaintiffs did not assert an '827 patent, but instead asserted an '872 patent in that earlier case. This is the same patent asserted in this litigation.

only did Messrs. Katrinecz and Byrd engage the services of a law firm to work on the patent application over the course of eleven months before Mr. Katrinecz  filed his petition for divorce on August 20, 1998, that patent application was complete on the day Mr. Katrinecz filed for divorce.  Specifically, on the very same day that Mr. Katrinecz filed for divorce, he executed a declaration stating, under penalty of perjury, that he had "reviewed and under[stood] the contents of a patent application titled "Low Power, Low Cost Illuminated Keyboards and Keypads."  Ex. R.  That declaration was filed with the patent application that ultimately led to the patent-in-suit in this case.

> ### 2. *Mr. Katrinecz's Own Actions Demonstrate His Belief That The Alleged Keyboard Invention Was Transferrable On the "Cut-Off Date" For Identifying Marital Assets Under Florida Law*

Second, even if Plaintiffs could support a suggestion that the alleged invention was incomplete as of August 20, 1998 with evidence, Mr. Katrinecz's own actions reveal his belief that as of August 20, 1998—the date he filed a petition for divorce in Florida—the alleged invention that he and Mr. Byrd were developing was transferrable.  Specifically, on the very same day he filed a petition for divorce, Mr. Katrinecz also executed an assignment agreement assigning his alleged keyboard invention to a company he formed only days after he signed the Marital Settlement Agreement.  *See* Exs. E-F.  That assignment stated that:

- Andrew J. Katrinecz "is the owner of [a] certain new and useful invention entitled "Low Power, Low Cost Illuminated Keyboards and Keypads";

- "Twenty-First Century Technology [*sic* Technologies], Inc. . . . is desirous of acquiring and Assignors are desirous of assigning to Twenty-First Century Technology [*sic* Technologies], Inc. all right, title and interest in and to said Invention, patents and patent applications on said Invention";

- Mr. Katrinecz and Mr. Byrd "do hereby SELL, ASSIGN, and CONVEY all right, title and interest throughout the world in and to: . . . 1. Said Invention; 2. All applications for patent or like protection on said Invention made by Assignors or their legal representatives . . . [;] 4. All substitutions for and <u>divisions</u>, continuations, continuations-in-part, renewals, reissues, extension, and the like of said applications and patents and like grants, including, without limitation, those obtained or permissible under past, present and future laws . . . [and] 6. The right to Assignee to file in its name applications for patents and like protection for said Invention in any county . . . (emphasis added)."

As further proof that Mr. Katrinecz believed that the August 20, 1998 transfer of patent rights was effective, purporting to act as "CEO" of Twenty-First Century, he thought to execute an assignment of Twenty-First Century back to himself and Mr. Byrd.  Specifically, on August 22, 2007, Mr. Katrinecz faxed a letter to the United States Patent Office stating that "Currently Twenty First Century Technologies, Inc. holds an assignment for" certain patent rights and that "[a]t this time we are re-assigning the assignment back to the original owners which are Andrew J. Katrinecz and David C. Byrd."  Ex. G. If he had nothing to transfer on August 20, 1998, then there would have been no reason to assign rights to that same invention back in 2007.

Mr. Katrinecz's own actions demonstrate that the alleged invention was complete by the time he filed for divorce on August 20, 1998. He plainly believed that it could be transferred to the company he had recently formed.  And, he later transferred those same rights back to himself.  Therefore, rights to the alleged keyboard invention constituted a marital asset under Florida law because the alleged keyboard invention was complete at the time of the filing of the petition for divorce.

**B.      Mr. Katrinecz Did Not Disclose Rights to the Alleged Keyboard Invention to His Ex-Wife During the Divorce and Those Rights Are Not Referenced in the Agreements or Final Judgment, So Those Rights Became Co-Owned Upon Entry of Final Judgment in the Divorce Proceeding Under Florida Law**

Because the alleged keyboard invention was not addressed in the Marital Settlement Agreement, the Addendum thereto, or in the Final Judgment Dissolving Marriage, it became co-owned by the two named inventors (Mr. Katrinecz and Mr. Byrd) and Ms. Armstrong by operation of Florida law.  Under Florida law, when "an item of personal property [is] omitted from the property settlement agreement and from the final judgment, the husband and wife become tenants in common in the property, by operation of law, upon entry of the final judgment."  *Demorizi*, 851 So.2d at 245.  That happened to the rights in the alleged keyboard invention when Mr. Katrinecz and Ms. Armstrong did not address those rights in their Marital Settlement Agreement or Addendum thereto and a final judgment was entered on the petition for dissolution of marriage.  Thus, Mr. Katrinecz and Ms. Armstrong became co-owners of the alleged keyboard inventions by operation of law.

Turning first to the Marital Settlement Agreement, it does not address ownership rights to the alleged keyboard invention or any patent issuing to that alleged invention.  *See* Ex. D.  Instead, the Marital Settlement Agreement indicates first that "[t]he parties have previously agreed upon and distributed all of the marital assets with the exception of a set of flatware, which the Wife shall insure that the husband receives within 30 days of the date hereof."[6]  Ex. D, ¶ 3.  There was no prior agreement as to rights in the invention since Mr. Katrinecz did not disclose them to Ms. Armstrong.  Cothern Decl. ¶¶ 4-7.  Then, for any and all other personal property that

---

[6] This "prior agreement" appears inconsistent with the merger clause indication that the Marital Settlement Agreement "supersedes any prior understandings or agreements between" Mr. Katrinecz and his ex-wife.  *Compare* Ex. D at ¶ 3 (indicating that the parties have "previously agreed upon and distributed all of the marital assets") *with id.* at ¶ 19 (indicating that the Marital Settlement Agreement "supersedes any prior understandings or agreements between them").

remained part of the marital estate, the Marital Settlement Agreement states that "[e]ach party shall have sole ownership of all personal property presently in his/her possession." *Id.*    But rights to inventions are not capable of being possessed in the sense used in the Marital Settlement Agreement.  Instead, rights to inventions are incorporeal rights that the Supreme Court long ago stated were "not susceptible to actual delivery or possession." *Waterman v. MacKenzie*, 138 U.S. 252, 260 (1891).  Thus, in referring to personal property that was in a party's possession, the Marital Settlement Agreement was not addressing the division of the inchoate right to obtain a patent on the alleged keyboard inventions that existed in August 1998 or the subsequent patent rights that matured from that inchoate right.

Not only does the Marital Settlement Agreement fail to address rights to the alleged keyboard invention developed during the marriage, that Agreement goes a step further.    It indicates that (1) there were no other agreements addressing the division of rights, which would include any rights to the alleged keyboard invention, and (2) even if there were, the Marital Settlement Agreement supersedes any such agreement.[7]  *Id.* at ¶ 19 ("Each party understands and agrees that this Agreement constitutes the entire Agreement between them, and supersedes any prior understandings or agreements between them.").

The Addendum Marital Settlement Agreement between Mr. Katrinecz and his now ex-wife did nothing to address interests in the alleged keyboard invention either.  *See* Ex. P.  Instead of dividing interests to the alleged keyboard invention, the Addendum addressed: (1) the payment of debts, including a provision that one spouse would hold the other harmless on the

---

[7] The Agreement also indicates that Mr. Katrinecz "made a full disclosure to the other as to his or her assets and liabilities and overall financial condition." Ex. D, ¶ 19.  Yet, no such disclosure appears on the financial affidavit and it appears that Mr. Katrinecz did not in fact disclose the alleged invention or his imminent plans to seek a patent to his ex-wife.  *See* Ex. Q; Cothern Decl. ¶¶ 3-5.

debts allocated to them under the Marital Settlement Agreement; (2) that neither party would be allowed to incur further debt on behalf of the other party and that all joint credit accounts should be closed immediately; (3) dividing a money market account; (4) dividing of checking accounts; (5) cooperation and payment for COBRA medical insurance benefits; and (6) a waiver of alimony.   Indeed, if anything, the Addendum Marital Settlement Agreement demonstrates that the statement that "[t]he parties have previously agreed upon and distributed all of the marital assets with the exception of a set of flatware," included in the Marital Settlement Agreement, Ex. Q, ¶ 3, was incorrect.  There were plainly assets that had been, at best, overlooked.

Turning last to the Final Judgment Dissolving Marriage, that judgment also fails to address rights to the alleged keyboard invention. Instead, the Final Judgment incorporates the two prior agreements by reference, and orders the parties to comply with the same.  Ex. C, ¶ 5.

Given that the Marital Settlement Agreement, the Addendum Marital Settlement Agreement, and the Final Judgment include no reference to the alleged keyboard invention or any ownership thereof, the rights to the invention—and thus the right to patents related to the invention once issued—were co-owned by both Mr. Katrinecz and his ex-wife Ms. Armstrong as of September 17, 1998.  *See Demorizi*, 851 So.2d at 245.

### C.   The Inchoate Rights That Mr. Katrinecz and Ms. Armstrong Co-Owned Following the Final Judgment Dissolving Their Marriage Led To Co-Ownership of Rights in the Keyboard Patents, Including the Patent-In-Suit

Because the inchoate right to obtain a patent on the allegedly inventive keyboard vested with Ms. Armstrong upon entry of the final judgment dissolving the marriage, she held a right to any patents issued for the alleged keyboard invention developed during the course of her marriage with Mr. Katrinecz.  "[B]etween the time of an invention and the issuance of a patent, rights in an invention may be assigned and legal title to the ensuring patent will pass to the assignee upon grant of the patent."  *Filmtec Corp.*, 939 F.2d at 1572.  Indeed, this is the holding

of the Supreme Court's 1850 decision of *Gayler v. Wilder*, 51 U.S. 477 (1850). In *Gayler*, the inventor, Fitzgerald, assigned inchoate rights to a patent (before the patent issued) to Wilder. *Id.* at 492. Although the patent issued in the name of the original inventor, *id.*, the Supreme Court held that the transfer of rights to the later-issued patent was a valid transfer that vested the transferee with legal title to the subsequently issued patent, *id.* at 493-94 ("[W]hen the patent issued to [the original inventor], the legal right to the monopoly and property it created was, by operation of the assignment then on record, vested in [the assignee]."). Notably, under *Gayler*, the vesting of legal title was automatic because Wilder held the right to title in the patent once it came into existence. The same applies here.

After the final judgment dissolved the marriage of Mr. Katrinecz and Ms. Armstrong, Ms. Armstrong held an interest in any patents that might issue on the alleged keyboard invention. Four such patents have issued, including the patent-in-suit. Exs. L-O. As a consequence of her co-ownership interest in patents to be issued on the alleged keyboard invention, she owned legal title to the '872 patent at the time this action was filed.

### D. All Joint Owners of the Patent-in-Suit Were Not Present In the Action At the Time it Was Filed and the Case Must Be Dismissed

While the law requires all co-owners of patent rights to voluntarily join in any suit for infringement, Ms. Armstrong was not a party to this suit when it was filed. Therefore, Plaintiffs lacked standing to sue. Moreover, Fed. R. Civ. P. 19 cannot be used to involuntarily join the remaining co-owner of the patent-in-suit. Thus, this suit must be dismissed.

Federal Circuit precedent could not be more clear: "a patent co-owner seeking to maintain an infringement suit must join all other co-owners." *STC.UNM v. Intel Corp.*, -- F.3d --, 2014 WL 2535257, *4 (Fed. Cir. Jun. 6, 2014). In the absence of all co-owners of a patent, the suit must be dismissed for lack of standing. *Id.* at *7 ("Because co-owner Sandia did not consent

to join this infringement suit against Intel and cannot otherwise be involuntarily joined on these facts, STC cannot maintain this suit."); *Ethicon*, 135 F.3d at 1468 ("Ethicon's complaint lacks participation of a co-owner of the patent. Accordingly, this court must order dismissal of this suit.").

Applying Florida law, at least one court has dismissed a case for lack of standing in light of patent rights being split during a divorce. In *Taylor v. Taylor Made Plastics, Inc.*, an ex-husband and an ex-wife entered into a settlement by which the royalty income from a patent was divided 40% to the ex-husband and 60% to the ex-wife. No. 8:12–CV–746–T–EAK–AEP, 2013 WL 1798964, *1 (M.D. Fla. Apr. 29, 2013). When the ex-husband sued for infringement, the ex-wife refused to join, going so far as to sue her ex-husband for contempt of the order dissolving the marriage. *Id.* This naturally led the defendant in the patent infringement action to file a motion to dismiss for lack of subject matter jurisdiction. *Id.*

After the *Taylor* court concluded that it needed to resort to Florida law to determine whether the plaintiff and his ex-wife were co-owners of the patent-in-suit, the district court explained that "the Florida Supreme Court has definitively held that 'a final judgment of dissolution settles all such matters as between the spouses . . . and acts as a bar to any action thereafter to determine such rights and obligations.' *Davis v. Die ujuste*, 496 So.2d 806, 809-10 (Fla. 1986)." *Taylor*, 2013 WL 1798964, *2. Thus, according to the district court, "the patent was a marital asset," and the settlement "merely reinforced that presumption" by equitably dividing rights in the patent between the ex-spouses. *Id.* The district court determined that under 28 U.S.C. § 1738, it had to give full faith and credit to the final judgment of the Florida court, and therefore it had to dismiss for failure to join a co-owner of the patent.

While the ex-wife in *Taylor* was a co-owner of the patent because of a marital settlement agreement, at the time this suit was filed, Ms. Armstrong was a co-owner of rights to the '872 patent by operation of Florida law because it was not addressed in the Marital Settlement Agreement or the final judgment dissolving the marriage. Therefore, like the *Taylor* case, this suit should also be dismissed for failure to join Ms. Armstrong, a co-owner of patent rights due to a divorce.

Nor can Ms. Armstrong be forced into this litigation under Rule 19. *STC.UNM*, 2014 WL 2535257, *6 ("To remove any doubt, this court holds that the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)."). Since Ms. Armstrong was not—and is not—a party to this suit, this suit must be dismissed for lack of standing.

## V.     CONCLUSION

Defendants' factual motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be granted because Ms. Terri Armstrong obtained rights to the patent-in-suit when final judgment was entered on the petition for divorce from one of the named inventors, Mr. Andrew Katrinecz and she was not named as a plaintiff in the suit as required by controlling precedent, thus depriving Plaintiffs of standing to bring this suit.

Dated: July 24, 2014

Respectfully submitted,

By: */s/ Kevin A. Keeling*

Jonathan E. Retsky
Illinois Bar No. 6201846
Jretsky@winston.com
James Winn
Illinois Bar No. 6307338
Email: jwinn@winston.com
**WINSTON & STRAWN LLP**

35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Andrew R. Sommer
Virginia Bar No. 70304
Email: ASommer@winston.com
**WINSTON & STRAWN LLP**
1700 K Street N.W.
Washington, D.C. 20006-3817
Telephone: (202) 285-5000
Facsimile: (202) 282-5100

Floyd R. Nation
Texas Bar No. 14819500
Email: fnation@winston.com
Kevin A. Keeling
Texas Bar No. 24060075
Email: kkeeling@winston.com
Phillip D. Price
Texas Bar No. 24060442
Email: pprice@winston.com
**WINSTON & STRAWN LLP**
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**COUNSEL FOR DEFENDANT,
MOTOROLA MOBILITY LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of July, 2014, a true and correct copy of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction was filed via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1), which will send notification of such filing to:


Eric B. Meyertons
Email: emeyertons@intprop.com
Ryan Tyler Beard
Email: rbeard@intprop.com
Willem G. Schuurman
Email: bschuurman@intprop.com
Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C.
1120 S. Capital of Texas Hwy
Building 2, Suite 300
Austin, TX 78746
512.853-8800 Telephone
512.853.8801 Facsimile


David E. Dunham
Email: ddunham@taylordunham.com
Cabrach J. Connor
Email: cconnor@taylordunham.com
Jennifer Tatum Lee
Email: jtatum@taylordunham.com
Taylor Dunham, LLP
301 Congress Ave., Suite 1050
Austin, TX 78701
512.473-2257
512.478-4409


*Counsel for Plaintiffs Andrew Katrinecz and David Byrd*


*/s/ Kevin A. Keeling*
Kevin A. Keeling